WORCESTER COUNTY GAS CO. v. DRESSER.

(Circuit Court of Appeals, First Circuit. May 2, 1907.)

No. 691.

PATENTS—VALIDITY AND INFRINGEMENT—PIPE COUPLING.

The Dresser patent, No. 625,155, for pipe coupling designed to unite the ends of sections of pipe and to insulate them from each other to prevent electrolysis, was not anticipated and discloses invention. Also *held* infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

The following is the opinion of the Circuit Court, by Lowell, Circuit Judge:

This was a bill in equity for the infringement of letters patent No. 625,-155, granted to Dresser, for improvements in pipe coupling. The following claims are in suit:

"1. The herein described combination of a clamping-ring provided with an aperture therethrough, a pipe-section having a uniform diameter throughout its length less than the diameter of the aperture in said ring and passing through such aperture a second pipe-section, means for insulating the pipe-sections from each other, means for insulating said first-mentioned pipe-section from the ring through which it passes, and means for compressing the insulating material by a movement of the clamping-ring longitudinally of the pipe-sections, whereby said pipe-sections are insulated from each other, said ring is insulated from the pipe-section passing therethrough, and provision is made for the movement of the said pipe-section through said ring to allow for expansion and contraction, substantially as described.

"2. The herein-described combination with two pipe-sections, of a clamping-ring for each pipe-section, provided with an aperture through the same for the passage of its pipe-section therethrough, means for insulating the adjacent ends of said sections from each other, means for insulating each of said rings from the pipe-section passing therethrough, clamping means for drawing said rings toward each other to compress the insulating material, whereby said pipe-sections are insulated from each other, each pipe-section is insulated from the ring through which it passes and provision is made for the free movement of each of said pipe-sections through their respective rings and through the insulating material to allow for longitudinal expansion and contraction, substantially as described.

"3. A pipe-coupling for uniting the adjacent ends of pipe-sections and insulating them from each other, including among its members a cylindrical portion, a clamping-plate adapted to surround one of said pipe-sections and provided with clamping-bolts, and an insulating and packing ring having a portion interposed between said cylindrical portion and said plate and an insulating sleeve portion surrounding said pipe-section between it and said plate, substantially as described.

"4. As pipe-coupling for uniting the adjacent ends of pipe-section and insulating them from each other, including among its members a cylindrical portion adapted to extend over the end of one of the pipe-sections, a clamping-plate adapted to surround said pipe-section and provided with a packing-recess on one side, and a packing and insulating ring having a portion adapted to be interposed between the said cylindrical portion and said plate and to

occupy said packing-recess and an insulating-sleeve adapted to extend between said plate and said pipe-section, substantially as described."

"7. A pipe-coupling for uniting the ends of two pipe-sections and insulating them from each other, comprising among its members two clamping-plates adapted to surround said pipe-sections, each provided with a packing-recess and apertures for clamping bolts, a coupling-sleeve adapted to extend over the adjacent end portions of the said pipe-sections, packing-rings adapted to engage said packing-recesses and to engage the ends of said sleeve, one of said rings being provided with an insulating-sleeve adapted to be interposed between one of said pipe-sections and the clamping-ring through which it passes and the clamping-bolts, substantially as described.

"8. A coupling for uniting the adjacent ends of pipe-sections and insulating them from each other, comprising among its members two clamping-plates, each provided with an aperture for the passage of the pipe therethrough and a packing-recess, a coupling-sleeve adapted to cover the adjacent portions of the pipe-sections between said plates, the packing-rings engaging said packing-recesses, and adapted to engage the ends of said sleeve, one of said rings being provided with an insulating-sleeve adapted to lie between one of said plates and the pipe passing therethrough, insulating material interposed between the ends of said pipe-sections and the clamping-bolts for uniting said clamping-plates, substantially as described.

"9. A coupling for uniting the adjacent ends of pipe-sections and insulating them from each other, comprising among its members two clamping-plates, each provided with an aperture for the passage of the pipe therethrough and a packing recess, a coupling-sleeve adapted to cover the adjacent portions of the pipe-sections, between said plates, the packing-rings engaging said packing-recesses, and adapted to engage the ends of said sleeve, one of said rings being provided with an insulating-sleeve adapted to lie between one of said plates and the pipe passing therethrough, an insulating-sleeve engaging said pipe within the coupling-sleeve, and having a flange engaging the end of the pipe, and the clamping-bolts, for uniting said clamping-plates, substantially as described."

From the specifications it appears that the object of the patent was to prevent the electrolytic action which disintegrates water and gas pipes laid underground in the neighborhood of electric wires. If the return current passing through a pipe thus laid is broken by insulating each length of pipe from its neighbor, electrolysis is so far diminished as to be negligible. The problem to be solved by the patentee, therefore, was the insulated coupling of pipes of several inches diameter laid under ground. The complainant's patent in suit has gone into considerable use. The defendant contends that the claims in suit are invalid, but otherwise does not deny infringements of claims 1, 2, 7, 8 and 9. No earlier device for accomplishing the object just described was put in evidence. The defendant relied wholly upon two classes of patents:

First. Those concerned with the coupling of pipe, without reference to insulation. Of these, 18,116, issued to Wright, is typical. Wright employed vulcanized rubber to make a tight joint, but without insulation or the thought of it. No sufficient provision was made in the Wright patent for the shrinkage and expansion of the pipes, a most important consideration in the art before the court. No. 389,797, a patent issued to the complainant before that here in suit, and even before the danger from electrolysis was recognized, also had for its object a tight joint, and it neither sought nor effected insulation.

Second. Patents intended to insulate a chandelier or a bracket from a gas pipe. This is a different art, whose appliances are useless for laying pipes underground. Corrosion of the insulating substance by water, acid, and other constituents of the soil is not to be feared in the air of a house. On the other hand, the chandelier joint must sustain a considerable weight in proportion to its size, which is not necessary in coupling gas and water pipes under ground. The patents thus urged on the court are in a different art from that of the patent in suit. In the Deavs patent, No. 299,206, for example, the two ends of the gas pipe are screwed into flanged heads, an arrangement impossible of adaptation to large pipes laid under ground. Moreover, there is uncontradicted evidence that all these gas couplings failed of their purpose. All the elements of the patent in suit were old, as the defendant points out, but

their combination was new, and it accomplished for the first time the end sought, viz., the coupling an underground joint so as to secure insulation and prevent electrolysis. The patentee thus obviated a difficulty recently discovered. The claims in suit are held valid.

Some slight question was made at the argument concerning the defendant's infringement of claims 3 and 4. No mention of the matter was made in the brief, and the suggestion came from the court. In the absence of some analysis of these claims, and of argument thereon, I do not feel myself required to make full investigation and to determine if claims 3 and 4 are limited to a specific form of the invention shown in figure 4 of the drawings, a form which the defendant does not employ. These claims, as well as the others in suit, are held to be infringed.

Decree for the complainant.

Richard J. McCarty (Arnold Scott, on the brief), for appellant.

Louis P. Whitaker (Whitaker & Prevost, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PER CURIAM. We are entirely satisfied with the conclusion reached by the Circuit Court, and with the reasons given therefor by the learned judge of that court.

The decree of the Circuit Court is affirmed, and the appellee recovers his costs of appeal.